UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| HAROLD ODEEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 4:12-cv-04083-SLD-JEH |
| CENTRO, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Plaintiff Harold ODeen alleges that he was fired from his job at Defendant Centro, Inc., ("Centro") because of his status as a disabled veteran. Before the Court are Centro's Motion for Partial Summary Judgment, ECF No. 13, Motion for Sanctions, ECF No. 24, and Motion for Summary Judgment, ECF No. 32. For the reasons set forth below, the Motion for Partial Summary Judgment is GRANTED, and the Motion for Sanctions is GRANTED IN PART and DENIED IN PART. ODeen did not respond to the Motion for Summary Judgment, so pursuant to Local Rule 7.1(D), that motion is deemed admitted; for that reason and because it is adequately supported, the Motion for Summary Judgment is granted. All requests for oral argument are DENIED.

## BACKGROUND[1]

On August 10, 2012, ODeen sued his former employer, Centro, alleging that Centro discriminated against him by terminating his employment and not accommodating his shoulder

---

[1] Unless otherwise noted, these facts are derived from Centro's Statement of Undisputed Material Facts in its Memorandum in Support of its Motion for Summary Judgment, ECF No. 33, because ODeen has not disputed them.

1

injury, and that Centro violated the Uniformed Services Employment and Reemployment Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq*.

Centro is a custom rotational molder of plastic products. Rotational molding is a specialized plastics process that produces sturdy, hollow parts; powdered resin is poured into molds, heated in an oven, and cooled. Centro hired ODeen on February 4, 2008, to work as a Product Inspector/Finisher. Product Inspector/Finishers, as the name suggests, finish, inspect, and prepare the parts for shipment. ODeen was promoted to Assistant Machine Operator and then Machine Operator at Centro's East Moline manufacturing facility. Both jobs involve loading and unloading the molds, and as Machine Operator, ODeen was also tasked with operating the rotational molding machinery.

ODeen joined the National Guard in 2006. In August, 2008, Centro granted ODeen leave to serve in Afghanistan. ODeen injured his shoulder while serving in Afghanistan. He returned to work as a Machine Operator at Centro on September 20, 2009. ODeen did not inform Centro of his injury at that time, and he did not request an accommodation. On February 24, 2011, ODeen complained of shoulder pain to Centro's Operations Manager, Kevin McMichael, who allowed ODeen to drive a forklift that day. ODeen did not characterize his shoulder injury as a disability resulting from his military service. Centro's Corporate Human Resources Leader, Rhonda Griffin, also learned of ODeen's shoulder problems on February 24, 2011. Griffin states that "at no time during his employment with Centro" did ODeen inform her "that he was injured during his deployment to Afghanistan." Griffin Aff. ¶ 27, ECF No. 33-1. Over the next couple of months, ODeen took some time off to undergo physical therapy for his shoulder—some of which was taken under the Family and Medical Leave Act—and informed McMichael that if his doctor determined

2

his shoulder needed surgery, the recovery time would be three to six months. McMichael informed ODeen that Centro's policy was that he would not be allowed to return to work until he was cleared of all restrictions. ODeen provided an Essential Functions form from his doctor to Centro on April 7, 2011, which indicated that ODeen could perform the essential functions of the Machine Operator job, so ODeen briefly returned to work from April 22, 2011 until April 26, 2011, when he left work after complaining of a shoulder flare-up. On April 27, ODeen provided another Essential Functions form from his doctor, which stated that he could not perform the essential functions of the Machine Operator job and that ODeen had no use of his right arm at that time. On May 2, 2011, ODeen told Brian McNeal, the Business Process Owner at the East Moline facility, that he was scheduled for shoulder surgery on May 9, 2011. He told McNeal that if things went well, he would need four to eight weeks to recover, but might need more time if the doctor found "something more major." During his employment at Centro, ODeen never informed McNeal that he was disabled during his deployment to Afghanistan, nor did he request an accommodation due to an injury he received during his deployment to Afghanistan. ODeen did not ask McMichael to place him in a Product Inspector/Finisher position in advance of his shoulder surgery.

On May 4, 2011, ODeen's FMLA protection ran out. Centro terminated ODeen's employment on May 5, 2011, because he was unable to perform the essential functions of any positions which Centro had open and for which ODeen was qualified. ODeen admits that he could not perform the essential functions of his job as a Machine Operator. Centro specifically determined that ODeen could not perform the essential functions of a Product Inspector/Finisher position, either, which ODeen admits requires use of the right arm. ODeen admits that he never provided anyone at

3

Centro with his Veteran's Administration (VA) disability form until after he filed his EEOC complaint.

On July 3, 2011, ODeen lodged a charge of disability discrimination in violation of the Americans with Disabilities Act with the EEOC. The EEOC mailed a notice of right to sue to ODeen on April 27, 2012, and his complaint was filed 105 days later. Pl.'s Am. Resistance to Mot. Partial Summ. J. 1, ECF No. 22-1. ODeen states in an affidavit that the earliest he could have received the Notice of Right to Sue was on May 14, 2012, 88 days before he filed his complaint, but that he cannot remember the specific date he received it. ODeen Aff. ¶¶ 5, 7, ECF No. 14. Centro offers a handwritten note from an EEOC investigator, summarizing a conversation with ODeen on April 21, 2012, which states that the investigator explained, "he will receive findings via certified mail." Def.'s Reply to Resistance to Mot. Partial Summ. J. Ex. 5, ECF No. 18-1.

Centro served ODeen with Interrogatories and a Request for Production of Documents on December 20, 2012. Mem. in Supp. Mot. Sanctions 2, ECF No. 25. On January 7, 2013, at the request of ODeen's counsel, Centro's counsel agreed to an informal extension of time to provide responses to the interrogatories and document request. *Id.* Centro's counsel also asked for (but did not receive) a new date to expect the responses. *Id.* On January 30, and again on March 4, 2013, Centro's counsel advised ODeen's counsel that his responses were overdue. *Id.* After some intervening discussions, Centro's counsel sent a letter to ODeen's counsel on April 2, 2013, requesting a response by April 5, 2013. *Id.* On April 11, 2013, ODeen served Centro with discovery requests. Pl.'s Resp. to Mot. Sanctions ¶ 1, ECF No. 29. On April 16, 2013, ODeen's counsel sent Centro's counsel an email indicating that his client would be providing him with responses on April 19, 2013, which prompted Centro's counsel to ask when she would receive the responses. Mem. in

4

Supp. Mot. Sanctions 2. ODeen's counsel did not respond. *Id.* On April 19, 2013, Centro's counsel sent a letter to ODeen's counsel requesting responses by April 23, 2013. *Id.* On April 22, 2013, ODeen's counsel sent Centro's counsel an email stating that he could not get discovery responses to her by the April 23 deadline. *Id.* at 3. On April 24, 2013, Centro filed a Motion to Compel, ECF No. 16. On May 14, 2013, the Court granted the Motion to Compel and set a new deadline for all outstanding written discovery of May 28, 2013, ECF No. 20. The Court indicated that a "[f]ailure to comply with this Order may result in imposition of sanctions, up to and including entry of default." *Id.* at 2. ODeen did not meet the May 28, 2013 deadline. Mem. in Supp. Mot. Sanctions 3. On June 10, 2013, ODeen filed incomplete discovery responses. Pl.'s Resp. to Mot. Sanctions ¶ 6.

## DISCUSSION

### I. Motion for Partial Summary Judgment

Centro moves for summary judgment on Count I of the Complaint on the theory that it is time-barred. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court will construe all facts and draw all reasonable inferences in favor of the nonmoving party. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 948 (7th Cir. 2009). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). There can be no genuine issue as to any material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

An action alleging a violation of Title VII must be filed within ninety days after a plaintiff receives notice of his or her right to sue. 42 U.S.C. § 2000e-5(f)(1) ("If the charge filed with the Commission . . . is dismissed . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . ."). This deadline is strict and leaves the Court no leeway to grant slight exceptions. *See Guy v. Robbins & Myers, Inc.*, 429 U.S. 229, 239–40 (1976) ("Congress has already spoken with respect to what it considers acceptable delay when it established a 90-day limitations period . . . Congress did not leave to courts the decision as to which delays might or might not be 'slight.'"); *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984) (holding that the filing of a Title VII lawsuit ninety-two days after receipt of receiving actual notice of right to sue was "untimely").

In general, the ninety-day period begins to run when a plaintiff receives actual notice of the right to sue. *Houston v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999) (citing *St. Louis v. Alverno College*, 744 F.2d 1314, 1316–17 (7th Cir. 1984)). A plaintiff "should not lose the right to sue because of fortuitous circumstances or events beyond his or her control which delay receipt of

the EEOC's notice," *St. Louis*, 744 F.2d at 1316, but the actual-notice rule does not apply to plaintiffs who fail to receive actual notice through their own fault, *Houston*, 185 F.3d at 839. In litigating over whether the plaintiff is at fault for delayed receipt of a notice of the right to sue, the plaintiff will often be "the only person in possession of the facts regarding why [he or ]she had not gotten the letter" sooner. *See id.* at 840 n.5. In such cases, the plaintiff has the burden of producing those facts. *Id.* For example, where a plaintiff delays in picking up a certified letter from the post office, he or she bears the burden of producing facts to explain the delay. *Id.*

In the Seventh Circuit, a plaintiff is presumed to receive notice five days after it is mailed from an administrative agency like the EEOC. *See Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989). District courts in this circuit disagree as to whether a plaintiff's mere say-so as to when he or she received actual notice is sufficient to rebut the five-day presumption. *Compare Scott v. Coca Cola Enters., Inc.*, No. 2:05-CV-41, 2005 WL 1661808, at *4 (N.D. Ind. July 15, 2005) ("Plaintiff has presented evidence of when he actually received notice of the right to sue by alleging in his complaint that he received the notice on November 9, 2004. It does not seem unreasonable that a letter could take 12 days to reach Plaintiff . . .") *with Ungeran v. Commonwealth Edison*, No. 00 C 5312, 2001 WL 1035181, at *2 (N.D. Ill. Sept. 7, 2001) ("By indicating a span of days in which Plaintiff claims he received [it,] this Court is left to guess the actual date Plaintiff received his copy of his Right To Sue Letter. This statement alone is insufficient.").

Here, it is undisputed that the EEOC mailed a notice of right to sue to ODeen on April 27, 2012, and that his complaint was filed 105 days later, on August 10, 2012. Pl.'s Am. Resistance to Mot. Partial Summ. J. 1, ECF No. 22-1. The only evidence ODeen offers to rebut the presumption that the notice reached him within five days of mailing—and 100 days before he filed—is his

7

affidavit, in which he guesses that the earliest he could have received the Notice of Right to Sue was May 14, 2012. ODeen Aff. ¶¶ 5, 7, ECF No. 14. This guess is not sufficient to overcome the five-day presumption. Moreover, it is simply not reasonable to infer that, through no fault of his own, the notice reached ODeen seventeen days after it was mailed. ODeen has produced no evidence—such as a return receipt showing the exact date he received the notice—that would allow the Court to determine that the delayed receipt was due to "fortuitous circumstances or events beyond his . . . control." *See St. Louis*, 744 F.2d at 1316. Therefore, the Court concludes that ODeen's Title VII claim is untimely, and grants Centro summary judgment on Count I.

## II. Motion for Sanctions

Because ODeen failed to comply with the Court's May 14, 2013 Order, ECF No. 20, the Court may impose appropriate sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A). The court "may issue further just orders" including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey an order except an order to submit to a physical or mental examination.

*Id.* Any sanctions must include the reasonable expenses caused by the failure to follow the discovery order, absent countervailing justification. Fed. R. Civ. P. 37(b)(2)(C). Centro asks the Court to render a default judgment against ODeen.

District courts have broad discretion in supervising discovery, including whether and how to sanction discovery misconduct, due to their proximity to the management of the case and the many

intangible and equitable factors that may be relevant in exercising such discretion. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citations omitted). District courts are not required "to select the 'least drastic' or 'most reasonable' sanction," *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996), but sanctions should be "proportionate to the circumstances" of a party's discovery violation, *Collins v. Illinois*, 554 F.3d 694, 696 (7th Cir. 2008).

### A. Sanctions

In asking for default judgment against the ODeen, Centro is effectively asking for dismissal of ODeen's case. Dismissal is a "draconian" sanction, and is only appropriate when "the noncomplying party acted with wilfulness, bad faith or fault." *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223–24 (7th Cir. 1992). Wilfulness and bad faith are associated with conduct that is intentional or reckless. *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000). Fault, however, "doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224.

The Court declines to dismiss ODeen's case, even though it would be justified in doing so. ODeen's behavior here was objectively unreasonable. He did not abide by the discovery deadlines to which he agreed, even when the Court ordered him to do so and gave him additional time to comply. These failures were not "inadvertent, isolated, [and] no worse than careless," as he suggests. Mem. Resp. to Mot. Sanctions 3, ECF No. 30. The Court concludes that the appropriate sanction here is to bar ODeen from using any evidence that would have been responsive to the outstanding discovery. *See* Fed. R. Civ. R. 37(b)(2)(A)(ii). This may have nearly the same practical effect as a dismissal because, at the time Centro's Motion to Compel was filed, ODeen had "failed

9

to provide *any* response to the [written] discovery [requests]." Order of May 14, 2013, ECF No. 20 (emphasis added); *see also* Mem. Resp. to Mot. Sanctions 1–4 (stating ODeen chose to withhold any response to the written discovery requests until he felt he could "fully and completely" respond).

### B. Expenses

Rule 37 mandates that a court order a party, or his attorney, that disobeys a discovery order to pay the reasonable expenses, including attorney's fees, caused by the failure to follow the order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Substantial justification exists where there is a "reasonable basis both in law and fact" for the disobedience. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting the phrase "substantially justified" in the context of fees under the Equal Access to Justice Act (EAJA)); *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1279 (7th Cir. 1986) (holding that the meaning of "substantially justified" in the EAJA should also be read into Rule 37's use of the phrase).

ODeen's failure to provide any written discovery responses, even in the face of a court order, was not substantially justified. ODeen had no reasonable basis in law and fact for the disobedience. First, he argues that it was impossible to receive ODeen's VA records any earlier than June 5, 2013; if that is true, ODeen should have simply timely responded, then amended his response at that later date. His second excuse defies logic. In ODeen's response to the Motion for Sanctions, he seeks to illustrate "[t]hat it is impossible for Plaintiff to fully and accurately answer Defendant's interrogatories until Defendant has responded to Plaintiff's interrogatories," by referencing Defendant's Interrogatory number seven (7). Pl.'s Resp. to Mot. Sanctions ¶¶ 3–4. However, the information requested in Interrogatory number seven—the nature, amount, supporting documents,

and manner used to calculate damages—is almost identical to the information that parties are required to furnish as part of their *initial disclosures* under Federal Rule of Civil Procedure 26(a). Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring litigants to disclose to one another "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."). According to the parties' Rule 26(f) discovery plan, initial disclosures were due December 1, 2012. Centro states that ODeen submitted his initial disclosures on January 14, 2013. Mem. in Supp. Mot. Sanctions 6. In addition, ODeen claims that he could not respond to Centro's discovery requests until it responded to his own requests, but ODeen's responses were originally due on January 19, 2013, and he did not serve discovery requests on Centro until April 11, 2013. ODeen does not explain why he did not serve those requests sooner if answers to them were so critical to his ability to respond to Centro's requests. As the Court stated in its May 14, 2013 Order, "[t]his is not how litigation is to be conducted," and ODeen had no reasonable basis in law or fact to believe that it is. Therefore, his failures are not substantially justified.

ODeen also argues that an award of expenses would be unjust because of his financial situation and his counsel's diligent attempts in eliciting discovery requests from him. ODeen has not sufficiently supported his claim that his counsel was so diligent that an award of expenses would be unjust, or that ODeen's hardship in supporting his family would render him incapable of paying any amount. Centro must file an affidavit on or before April 11, 2014, stating the reasonable expenses, including attorneys fees, caused by ODeen's failure to obey the Court's May 14, 2013 Order. The Court will assess the affidavit and issue further orders regarding payment of costs by

11

ODeen and his counsel.

**III. Motion for Summary Judgment**

As explained above, Count I of ODeen's complaint is time-barred. Therefore, the Court finds Centro's Motion for Summary Judgment moot as to Count I. The Court considers Centro's Motion for Summary Judgment only as to ODeen's remaining count, Count II, in which ODeen alleges Centro wilfully violated the USERRA. As previously explained, this motion is deemed admitted under Local Rule 7.1(D) because ODeen did not respond to it; the Court also finds that the motion is adequately supported (both factually and legally).

The USERRA is designed "to provid[e] for the prompt employment of [persons performing service in the uniformed services] upon their completion of such service," and "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4311(a)(2)–(3). ODeen does not specify which section or sections of the act he believes Centro violated. Section 4311 prohibits, in relevant part, denial of "reemployment, retention in employment . . . or any benefit of employment by an employer on the basis of [] membership [in a uniformed service]." 38 U.S.C. § 4311(a). An employer "shall be considered to have engaged in actions prohibited" if "the person's membership . . . is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1). Section 4313(a) states that a person entitled to reemployment under § 4312 "shall be promptly reemployed" and describes the positions to which that person should be reemployed, in:

> the case of a person who has a disability incurred in . . . such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the

> person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service . . . .

38 U.S.C. § 4313(a)(3). Centro does not dispute that ODeen is a person who was entitled to reemployment under § 4312.

Centro argues that it complied with § 4313's reemployment requirements, and the Court agrees. The undisputed facts show that after his leave of absence to serve in Afghanistan, ODeen was returned to the same position that he held prior to his leave. There is no evidence to suggest that ODeen was not qualified for the Machine Operator position, or that he needed an accommodation. The only reasonable conclusion that can be drawn from the facts presented is that between September 20, 2009—his date of reemployment—and February 24, 2011, no one at Centro knew that ODeen had an issue with his shoulder. Therefore, Centro has shown "that there is no genuine dispute as to any material fact and [Centro] is entitled to judgment as a matter of law" as to the reemployment requirements of § 4313. *See* Fed. R. Civ. P. 56(a).

Centro has also established that it did not violate the anti-discrimination provisions of § 4311. No single shred of evidence has been introduced that would support the inference that ODeen's membership in the uniformed services was a "motivating factor" for his discharge. Rather, the evidence shows that ODeen's employment was terminated because he could not perform the essential functions of his job as a Machine Operator. The facts also show that Centro considered accommodating ODeen in a Product Inspector/Finisher role, but that he could not perform the essential functions of that job, either. Therefore, Centro has also shown that as to the anti-discrimination provisions of § 4311, there is no genuine dispute as to any material fact, and Centro is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS Centro's Motion for Partial Summary Judgment, ECF No. 13, and Motion for Summary Judgment, ECF No. 32. The Court GRANTS IN PART and DENIES IN PART Centro's Motion for Sanctions, ECF No. 24, and directs Centro to file its affidavit of reasonable expenses on or before April 11, 2014.

Entered this 26th day of March, 2014.

s/Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
